**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**SHREVEPORT DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 11-189-01 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| ALBERT LITTLE | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a motion to suppress wire and electronic communications, filed by the Defendant, Albert Little ("Little"). See Record Document 201. Little, along with ten co-defendants, was charged with various drug trafficking offenses in violation of Title 21 of the United States Code. He has moved to suppress the contents of the wiretap expected to be used against him at trial, contending that the wiretap application and accompanying affidavit: (1) lacked probable cause and (2) failed to satisfy the requirement of legal necessity.[1] Because the Court concludes that the wiretap was, in fact, supported by probable cause and sufficiently satisfied the necessity requirement, Little's motion is **DENIED**.

**I.    BACKGROUND.**

On July 29, 2011, a fourteen count indictment was returned by a federal grand jury against Little and his co-defendants. Little was charged in count one with conspiracy to

---

[1] All of Little's co-defendants have pleaded guilty. Thus, Little is the only defendant challenging the wiretap.

posses with intent to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846.  Count Five charged him with possession with intent to distribute five grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  Counts Seven and Eleven charged Little with use of a communication facility in facilitating the commission of conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 843(b).

The indictment was the result of an ongoing investigation, headed by the Drug Enforcement Administration ("DEA") and Louisiana State Police, which began in August of 2010.  The investigation focused on a Winn Parish narcotics trafficking organization, with which Little's co-defendant, Lauralyn Thompson ("Thompson"), was involved.  Investigators were able to develop two confidential sources who were familiar with Thompson's drug operation. Two undercover agents made controlled drug purchases from Thompson, evidence of which was contained in recorded conversations and cell phone text messages between the respective agents and Thompson.

Based upon information received from the confidential sources, along with undercover agents, surveillance, controlled drug purchases, and pen registers, an application for a wiretap was lodged in the Western District of Louisiana.  The application sought authorization for the interception of the wire and electronic communications of phone number (318)450-9915, believed to be utilized by Thompson.  The application was supported by the affidavit of Trooper Hank Haynes, who is a member of the DEA Task Force.  The application was granted in an order signed by Judge S. Maurice Hicks, Jr.

Trooper Haynes' affidavit named Little as a "target interceptee," and indeed, communications between Little and Thompson were intercepted. Little now moves to suppress the wiretap and all evidence obtained therefrom, arguing that the affidavit neglected to establish probable cause and failed to satisfy the "necessity" requirement, as set forth in Title 18, United States Code, Section 2518(1)(c).[2] The Government has filed an opposition to Little's motion to suppress.

## II. LAW AND ANALYSIS.

At the outset, the Court notes that a judge's decision to issue a wiretap order based on his determination that probable cause exists is entitled to great deference. See United States v. Edwards, 124 F.Supp.2d 387, 398 (M.D.La. Aug. 22, 2000) (citing United States v. Phillips, 727 F.2d 392, 395 (5th Cir. 1984)); see also United States v. Tomblin, 46 F.3d 1369, 1376 (5th Cir. 1995) (stating that the decision to authorize a wiretap is reviewed for clear error). When the judge authorizing a wiretap "uses common sense and bases [his] finding on the entire picture presented to [him]," review of that decision is limited. United States v. Gonzales, 866 F.2d 781, 786 (5th Cir. 1989). Indeed, the judge's "determination is conclusive in the absence of arbitrariness." Id. (quoting United States v. Weinrich, 586 F.2d 481, 487 (5th Cir. 1978)). As such, in the instant case, this Court's task is to

---

[2] Although Little's phone was not the subject of the wiretap order, "[a]ny aggrieved person . . . may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom." 18 U.S.C. § 2518(10)(a). An aggrieved person is defined as one who was intercepted or against whom the interception was directed. 18 U.S.C. § 2510(11).

undertake an independent review of the sufficiency of the affidavit to ensure that Judge Hicks had a substantial basis for concluding that probable cause existed. Id.

## A. Probable Cause.

An application for a court-authorized wiretap must demonstrate probable cause "that an individual is committing, has committed, or is about to commit a particular offense" and "that particular communications concerning that offense will be obtained through such interception." 18 U.S.C. § 2518(3)(a)-(b). "Probable cause does not require proof beyond a reasonable doubt, but only a showing of the probability of criminal activity." United States v. Froman, 355 F.3d 882, 889 (5th Cir. 2004)(quoting United States v. Daniel, 982 F.2d 146, 151 (5th Cir. 1993)). As the Supreme Court instructed in Illinois v. Gates, "probable cause is a fluid concept- turning on the assessment of probabilities in particular factual contexts- not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232, 103 S.Ct. 2317, 2329 (1983). "Only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." Id. at 235, 103 S.Ct. at 2330.

In the instant case, Little contends that the wiretap affidavit lacked probable cause. Little's motion to suppress lacks clear articulation on this point. However, as the Court understands it, Little believes there is insufficient probable cause specifically tying him to Thompson's drug conspiracy. In presenting this argument, Little concentrates on how few references are made to him in Trooper Haynes' affidavit. Noting that he was not mentioned during the March 3, 2011, March 11, 2011, or March 13, 2011 controlled

purchases, Little points to the fact that it was not until pages 19-21 of the affidavit that he is first substantively mentioned (in reference to a March 24, 2011 drug purchase). Little also criticizes the statement that "Agents have learned through CS information that Thompson and Winn Parish sheriff, Albert 'Bodie' Little, are romantically involved." Record Document 201, p. 7. Little argues that there is no particularized information included to support this assertion, nor is there any way to assess the accuracy of the statement that he and Thompson were romantically involved. However, the Court notes that the above-quoted passage was not without support. Rather, the following statements, made by Thompson to an undercover officer, provided adequate contextual support: "You know, let me tell you something, I've had like an ongoing affair with the sheriff for two years, so . . . . Don't ever panic. Don't ever panic if something, you know, you pull up and he's there or something." Record Document 201, Exhibit 2, p. 21.

Thus, the notion that Little and Thompson were romantically involved not only came from a confidential source, it also came from Thompson herself. Thompson was neither a confidential source nor a cooperating witness, but rather was a primary target of this drug investigation. The statements of one co-conspirator regarding her romantic involvement with another co-conspirator need not be corroborated by law enforcement before applying for a wiretap.

Furthermore, despite Little's insistence that probable cause was lacking due to the insufficient number of references to him in Trooper Haynes' affidavit, the Court finds to the contrary. In this case, the affidavit was designed to secure a wiretap on Thompson's

phone, not Little's. Thus, the affidavit was crafted to establish probable cause for the interception of communications on Thompson's phone. Title 18, United States Code, Section 2518 requires, among other things, that a wiretap application identify "the identity of the person, if known, committing the offense and whose communications are to be intercepted." 18 U.S.C. § 2518(1)(b)(iv) (emphasis added). A judge can authorize a wiretap when "there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense" and there is probable cause for belief that the target phone is being used, or is about to be used, in connection with the commission of the crime or is commonly used by the person. Id. at 2518(3)(a), (d) (emphasis added). There is no requirement for probable cause to be demonstrated as to every individual who is named as a target interceptee. See United States v. Lutcher, 2004 WL 1274457 (E.D.La. June 4, 2004)(explaining "the statute only requires that the government demonstrate that probable cause exists with respect to 'an individual' and it does not expressly require such a showing with respect to each person named in the application"); see also United States v. Nunez, 877 F.2d 1470 (10th Cir. 1989); United States v. Figueroa, 757 F.2d 466 (2d Cir. 1985); United States v. Domme, 753 F.2d 950 (11th Cir. 1985); United States v. Martin, 599 F.2d 880 (9th Cir. 1979) (overruled on other grounds); United States v. Tortorello, 480 F.2d 764 (2d Cir. 1973); United States v. Pappas, 298 F.Supp.2d 250 (D.Conn. 2004); United States v. Trippe, 171 F.Supp.2d 230 (S.D.N.Y. 2001); United States v. Marcy, 777 F.Supp. 1400 (N.D.Ill. 1999); United States v. Ambrosio, 898 F.Supp. 177 (S.D.N.Y. 1995). Instead, the judge's determination is whether

an individual is committing or is about to commit a qualifying offense.  Probable cause in this case was demonstrated as to Thompson and the use of Thompson's phone to commit criminal offenses.  Probable cause need not be demonstrated as to Little, and this Court will not analyze the affidavit to determine if this unnecessary showing was made.

Little also challenges the affidavit, contending there is no indication that: (1) he relayed to Thompson the results of the driver's license check on the undercover agent; (2) he would not have conducted a similar check for any Winn Parish resident; or (3) he was not conducting his own drug investigation.  Seemingly, Little maintains that some of the facts, standing alone, are susceptible to innocent explanation and thus do not rise to the level of probable cause.  Because a suspect may have a defense to certain actions does not preclude these actions from constituting probable cause for the issuance of a wiretap or other warrant. Moreover, the evidence culminating in probable cause is not to be parsed out and examined individually, as though in a vacuum.  Innocent conduct, viewed in the context of the totality of the other facts and circumstances averred, may provide a basis for a finding of probable cause.  See Illinois v. Gates, 462 U.S. at 245 n. 13.  Further, the Fifth Circuit has stated, "We must be mindful that probable cause is the sum total of layers of information and the synthesis of what police have heard, what they know, and what they observed as trained officers.  We weigh not individual layers but the laminated total." United States v. Weinrich, 586 F.2d 481, 490 (5th Cir. 1978) (quoting United States v. Edwards, 577 F.2d 883, 895 (5th Cir. 1978)).  Little's argument ignores the totality of the facts and circumstances set forth in Trooper Haynes's affidavit.  Even if his actions,

standing alone, were lawful, there still existed the probability that he was acting unlawfully. As such, Little's innocent explanations do not undermine the probable cause finding.

Next, Little challenges the affidavit's inclusion of the information provided by the two confidential sources. As to confidential source number one ("CS 1"), the affidavit stated that he/she was a paid informant who had been providing accurate and reliable information to law enforcement for the previous eleven months. CS 1's information had been "substantially verified and corroborated with information obtained by other means such as surveillance, law enforcement records, pen register analysis and recorded telephone calls." Record Document 201, Exhibit 2, p. 6. Little argues that the affidavit is deficient because it "is silent on the total paid to the CS and any other incentives afforded CS for his/her cooperation." See Record Document 201, Exhibit 1, p. 6. Further, the affidavit does not state whether CS 1 has a criminal history. With respect to confidential source number two ("CS 2"), the affidavit reflects that he/she has been providing substantially verified and corroborated information for the previous eight months. Record Document 201, Exhibit 2, p. 32. Little avers that although the affidavit admits CS 2 was cooperating in hopes of receiving assistance on a prior drug arrest, the affidavit was defective because it failed to delineate CS 2's criminal record and provided no information to assess the reliability of CS 2's information.

The Court finds these arguments unavailing. First, that the affidavit failed to specify the amount of money paid to CS 1 does not detract from the probable cause replete in the affidavit, nor would the inclusion of it add to the probable cause determination. To the

extent that the amount of money is relevant, this issue can be thoroughly explored through cross-examination at trial. Second, with respect to the confidential sources' criminal histories, or lack thereof, in the absence of particularized information or even specific allegations that the affidavit contained material misstatements or omissions which were intentionally or recklessly false or misleading, the Court will not presume something nefarious was omitted so that the Government could secure the wiretap.

Finally, with respect to Little's challenge to the reliability of the two confidential sources, the Court notes that according to the affidavit, CS 1 and CS 2 had been providing verified and corroborated information to law enforcement for the previous eleven and eight months, respectively. As the Fifth Circuit has explained, "mutually enforcing and corroborative information from confidential sources is a strong indicator of probable cause even when the individual reliability of the sources is not clearly established." United States v. Weinrich, 586 F.2d 481, 490 (5th Cir. 1978). Lastly, while the two confidential sources provided helpful information to the investigation, it is imprudent to suggest that they, alone, established probable cause. Rather, the probable cause supporting the issuance of the wiretap was based in large part upon several controlled drug buys between the undercover agents and Thompson, along with surveillance and pen register information. This clear and direct evidence demonstrates firmly that an individual "is committing, has committed, or is about to commit a particular offense."

Not only is it beyond peradventure that Trooper Haynes' affidavit demonstrated probable cause to believe that Thompson was entering into or was about to enter into drug

"deals", but his affidavit establishes that the terms of these deals were hammered out between the parties in cell phone communications. Thus, it follows that further communications concerning those offenses could be obtained through interception of those cell phone calls and text messages. Trooper Haynes detailed numerous reasons to believe that the interception of calls and text messages on Thompson's phone would lead to evidence of drug crimes. The previous controlled buys firmly established Thompson's role in the drug trafficking operation- she bought from persons higher up the chain and sold to those lower down the chain. Surveillance and other information revealed that defendant Timothy Pine was involved in a suspected drug transaction and that defendant Mickey Box provided counter-surveillance for Thompson. Furthermore, when Thompson became suspicious of one of the undercover agents, she requested that Little conduct a check on the agent's driver's license to ensure he was not law enforcement. A driver's license check was, in fact, conducted through the Winn Parish Sheriff's Office, and the inquiry identified Little as the requesting party. When viewed as a whole and in a common sense fashion, the Court finds that the facts averred in the affidavit sufficiently established probable cause that Thompson was committing or was about to commit the crimes set forth in the affidavit. Accordingly, the evidence will not be suppressed for lack of probable cause.

  **B. The Necessity Requirement.**

  The gravamen of Little's complaint is that Trooper Haynes' affidavit failed to establish the necessity of the wiretap, as required by Title 18, United States Code, Section 2518. That Section requires that each affidavit in support of an application for a wiretap

contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). This "necessity" requirement was included in the statute in an effort to prevent wiretapping from being employed in cases where traditional investigative techniques are sufficient. See United States v. Webster, 734 F.2d 1048, 1055 (5th Cir. 1984). However, establishing necessity does not require a showing that "every other imaginable mode of investigation would be unsuccessful." United States v. Diadone, 558 F.3d 775, 778 (5th Cir. 1977). Indeed, as courts have repeatedly held, the Government need not exhaust every alternative before a wiretap is proper. See United States v. Bankston, 182 F.3d 296, 305 (5th Cir. 1999). Rather, the affidavit must simply explain the prospective or retrospective failure of investigative techniques, United States v. Hyde, 574 F.2d 856, 867 (5th Cir. 1978), and courts should make a common sense evaluation of the statements in the affidavit to determine whether necessity has been established. See United States v. Guerra-Marez, 928 F.2d 665, 670 (5th Cir. 1991).

In the instant case, the Court finds that the allegations set out in the affidavit satisfy the necessity requirement. The intercepted communications were expected to reveal discussions concerning the sale and delivery of methamphetamine, Thompson's source(s) of supply, the identities of other co-conspirators, and the role Little played in the drug trafficking organization. Trooper Haynes' affidavit did not merely assert that numerous investigative techniques were used in this case, but rather outlined the various methods

that had been used to achieve the investigative goals, as well as the methods that, in Trooper Haynes' opinion, could not be utilized with success. Specifically, physical surveillance, confidential sources, undercover agents, recorded phone calls, controlled drug purchases, a search warrant for text messages on Little's phone, and the use of pen register analysis had all already been employed. Trooper Haynes explained why other investigative techniques were unlikely to be successful. For instance, constant visual surveillance of Thompson's residence was impossible to maintain, as Thompson lived in a mobile home that experienced very limited vehicle traffic. Furthermore, the targets were conscious of surveillance and attempted to conduct counter-surveillance. A pole camera was not used because Trooper Haynes feared it may have looked conspicuous given the surroundings and, in addition, it was believed that one of Little's deputies had a brother working for the utility company. Thus, use of a pole camera may have jeopardized the investigation. Trooper Haynes intended to use a tracking device on Thompson's vehicle, however the opportunity to do so never presented itself. Finally, Trooper Haynes explained why the confidential sources and undercover agents could not accomplish the investigative objectives. They could not: (1) gain access to higher levels of the drug organization or Thompson's source of supply; (2) identify all of the co-conspirators; or (3) provide information as to the full scope of the organization. These are but a few of the reasons provided for, and concrete examples supporting, the necessity of the wiretap.

Although Little asserts that the Government made "no real effort to use alternative investigative techniques that were less intrusive than the interception of the Sheriff's

communications with Ms. Thompson" [Record Document 224], his disagreement is not persuasive. The Fifth Circuit has expressed its reluctance to have reviewing judges or courts "impose their hindsight upon law enforcement agencies," and this Court declines to do so here. Guerra-Marez, 928 F.2d at 670. After a thorough review of the affidavit, the Court is convinced that adequate alternatives were attempted before the Government sought wiretaps. Accordingly, the Court finds that the necessity requirement was met.

### III. CONCLUSION.

Based on the foregoing, the Court finds that the application and affidavit for the interception of Thompson's wire and electronic communications set forth probable cause to believe that particular conversations concerning the target offenses would be intercepted over the target telephone. The Court additionally holds that the necessity requirement of 18 U.S.C. § 2518 was met. Accordingly,

**IT IS ORDERED** that Little's motion to suppress [Record Document 201] be and is hereby **DENIED**.

THUS DONE AND SIGNED in Shreveport, Louisiana this 14th day of February, 2012.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE